IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHARIF HASSAN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE NO.** |
| | ) | |
| **v.** | ) | **1:21-CV-04629-TWT** |
| | ) | |
| CITY OF ATLANTA, ATLANTA | ) | |
| POLICE OFFICER FRANCESCA | ) | |
| BARBER, ID No. 6428 sued in her | ) | |
| individual capacity; JANE AND JOHN | ) | |
| DOES Nos. 1-6, all current or former | ) | |
| employees of the Atlanta Police | ) | |
| Department sued in their individual | ) | |
| capacities; JANE AND JOHN | ) | |
| DOES Nos. 7-8 all current or former | ) | |
| employees of the Atlanta Department of | ) | |
| Corrections sued in their individual | ) | |
| capacities, | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MOTION TO DISMISS AND
## INCORPORATED BRIEF IN SUPPORT

COME NOW, Defendants City of Atlanta and Officer Francesca Barber of

the Atlanta Police Department ("Defendants") pursuant to Fed. R. Civ. P. 12(b)(6),

and file this Motion to Dismiss and Incorporated Brief in Support and move this

Honorable Court to dismiss the claims asserted against Defendants, City of Atlanta,

Officer Francesca Barber, Jane and John Does Nos. 1-6, and all current and former employees of the Atlanta Police Department, Jane and John Does Nos. 7-8 all current or former employees of the Atlanta Department of Corrections, to the extent that those persons are City of Atlanta employees, for failure to state a claim upon which relief can be granted. For the reasons stated herein, Defendants respectfully request this Court dismiss this matter with prejudice.

## I.    STATEMENT OF THE CASE

Plaintiff Sharif Hassan ("Plaintiff"), filed this 42 U.S.C. § 1983 ("Section 1983" or "§ 1983") and the Privacy Protection Act, 42 U.S.C. § 2000aa, *et seq.* ("Section 2000aa" or "§ 2000aa") action on November 8, 2021, alleging federal and state law violations of his First, Fourth, and Fourteenth Amendment Rights under the Constitution of the United States of America and state law claims.[1] Specifically, Count I of Plaintiff's Complaint alleges violations of Plaintiff's rights under the First Amendment of the United States Constitution ("First Amendment") by the City of Atlanta ("City") because he believes Executive Orders 2020-92 and 2020-94 "constituted overly broad time, place, and manner restrictions that failed to leave open 'ample alternative channels' for communication by the press."[2] Count II of

---

[1] *See* Docket 1 (hereinafter "Dkt. 1") generally.
[2] Dkt. 1, ¶¶ 127-128.

Plaintiff's Complaint alleges violations of Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution ("Fourteenth Amendment") by the City, again because he believes Executive Orders 2020-92 and 2020-94 were discriminatory in nature as the City's curfew enforcement was "unlawful because the First Amendment prohibits governments from restricting the rights of some journalists while affording access to others" and, as such, "violated [Plaintiff's] rights to equal protection".[3]

Count III of Plaintiff's Complaint alleges violations of Plaintiff's rights under the First Amendment by Defendants Barber and Does Nos. 1-2 in their individuals.[4] Under Count III, Plaintiff alleges that Defendants Barber and Does Nos. 1-2 interfered with his right to photograph and film police officers carrying out their official duties and as a result of photographing an arrest, Plaintiff was arrested for curfew violation.[5] Count IV of Plaintiff's Complaint alleges violations of Plaintiff's rights under the Fourth Amendment of the United States Constitution ("Fourth Amendment") by Defendants Barber, APD Does 1-6, and ADC Does 7-8 in their individual capacities (hereinafter, "Individual Defendants") when Plaintiff's

---

[3] Dkt. 1, ¶¶ 134, 136.
[4] Dkt. 1 at 24.
[5] Dkt. 1, ¶¶ 139, 144.

memory cards were not returned after he was released from custody.[6] Count V of Plaintiff's Complaint alleges violations of 42 U.S.C. § 2000aa against Individual Defendants for "seizure of camera memory cards."[7] Count VI of Plaintiff's Complaint alleges unlawful seizure, false arrest, and malicious prosecution against all Defendants for Plaintiff's arrest and prosecution.[8]

Finally, Count VII of Plaintiff's Complaint alleges violations Plaintiff's rights under Georgia's Open Records Act, O.C.G.A. § 50-18-70 by the City for "failing to timely produce requested records and improperly citing an inapplicable privilege in an attempt to justify their withholding".[9] Due to these alleged violations, Plaintiff believes he is entitled to recover compensatory and punitive damages, along with attorney's fees against Defendants; and declaratory and injunctive relief.[10]

Of note, Defendants disagree with Plaintiff's recitation of the facts in the Complaint but, as they must, will accept them as true only for the purposes of this Motion to Dismiss and Brief. Regardless of the interpretation of the facts, the Defendants are not liable as a matter of law.

---

[6] Dkt. 1, ¶¶ 150-151.
[7] Dkt. 1, ¶ 159.
[8] Dkt. 1, ¶ 174.
[9] Dkt. 1, ¶ 182.
[10] Dkt. 1 at 32-33.

## II.   <u>STATEMENT OF FACTS</u>

This case arises out of the June 1, 2020 arrest of Plaintiff by the Atlanta Police Department ("APD").[11]  The death of George Floyd sparked national protests and civil unrest. On May 30, 2020, the City's mayor issued Executive Orders 2020-92 and 2020-94, declaring "an emergency to exist when, in the mayor's opinion, there is an extreme likelihood of destruction of life or property due to an unusual condition of the violence…" and instituted emergency curfew regulations to begin at 9:00 p.m. to sunrise, for seventy-two (72) hours, among other necessary provisions due to the escalation of violence and destruction during protests and demonstrations within the City.[12]

On June 1, 2020, Plaintiff, a freelance photojournalist, traveled to photograph protests and demonstrations in the City relating to the death of George Floyd and other police controversies.[13] The National Guard and several City of Atlanta police officers were present, including Defendant Barber and Jane and John Does Nos. 1-6.[14] Plaintiff, in defiance of Executive Orders 2020-92 and 2020-94, was arrested for

---

[11] *See* Docket 1 generally.
[12] Dkt. 1, ¶¶ 19, 24; *see also* Executive Orders 2020-92 and 2020-94.
[13] Dkt. 1, ¶ 11, 17, 27.
[14] Dkt. 1 at 7.

violating the curfew order.[15] Following his arrest, Plaintiff was taken to an outdoor processing area near the CNN Center for intake, and all items on his person were confiscated.[16] Plaintiff was then transported to the Atlanta City Detention Center ("ACDC").[17]

While at the ACDC, Plaintiff alleges "differential treatment while he was in custody due to his Arab race and ethnicity" under the direction of Jane or John Does 3-8.[18] Plaintiff also alleges that his camera was returned to him a week following his June 2, 2020 release and he did not receive his camera memory cards.[19] As a consequence of his arrest, Plaintiff appeared before the Atlanta Municipal Court three times until his charges were dropped.[20]

### III.   ARGUMENT AND CITATIONS OF AUTHORITY

Pursuant to Fed. R. Civ. P. 12(b)(6), this Court is authorized to dismiss an action when a complaint fails to state a claim upon which relief can be granted and no construction of the factual allegations will support the cause of action.[21] While a

---

[15] *See* Docket 1 generally.
[16] Dkt. 1, ¶¶ 52-54.
[17] Dkt. 1, ¶ 59.
[18] Dkt. 1, ¶¶ 95-96.
[19] Dkt. 1, ¶¶ 97-98.
[20] Dkt. 1, ¶¶ 107-108.
[21] Fed. R. Civ. P. 12(b)(6); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

court is required to accept as true the complaint's factual assertions, it is not bound to accept as true a legal conclusion couched as a factual allegation.[22] Although a motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint, a court may "dismiss a complaint on a dispositive issue of law."[23]

### A. Plaintiff's Claims Against the City of Atlanta Do Not Pass Muster Under the *Monell* Standard and must be Dismissed.

Plaintiff's claims fail to meet the standard set forth in *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978). The *Monell* Court held that a municipality can be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the constitutional violation at issue. "A municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[24] Thus, *respondeat superior* or vicarious liability will not attach under § 1983.[25] "A [municipality] does not incur § 1983 liability for injuries caused solely by its employees."[26] "Nor does the fact that

---

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[23] *Marshall County*, 992 F.2d at 1174.
[24] *Id.* at 691.
[25] *Id.* at 694–695.
[26] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (quoting *Monell, supra,* 436 U.S., at 694.

a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee infer municipal culpability and causation."[27]

The *Monell* Court further held that municipalities could only be held liable when a government "policy" or "custom" was responsible for a constitutional violation. In other words, only where the municipalities' "policies are the "moving force [behind] the constitutional violation.""[28] "It is only when the 'execution of the government's policy or custom . inflicts the injury' that the municipality may be held liable under § 1983."[29] Simply stated, the "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[30]

"[T]o impose §1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that

---

[27] *McDowell*, 392 F.3d 1283, 1289 (11th Cir. 2004) (quoting *Bd. of County Com'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

[28] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

[29] *City of Canton*, 489 U.S. 378, 385 (1989) (quoting *Monell, supra,* 436 U.S., at 694).

[30] *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 397 (1997).

the policy or custom caused the violation."[31] There are "two methods by which to establish a [city's] policy: identify either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker of the [city]."[32] Under either avenue, "a plaintiff (1) must show that the local governmental entity has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue."[33] Plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice coupled with deliberate indifference toward same.[34]

Here, Plaintiff has failed to establish municipal liability under *Monell*. The record contains no evidence that Officer Barber is either the City's principal policymaker or its final policymaker, only than she effectuated Plaintiff's arrest.

---

[31] *Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1326 (S.D. Fla. 2018); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton*, 489 U.S. 378, 388 (1989)).

[32] *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (citing *Monell*, 436 U.S. at 690-91).

[33] *Grech*, 335 F.3d 1326, 1330 (11th Cir. 2003) (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737 (1989); *Hill v. Clifton,* 74 F.3d 1150, 1152 (11th Cir.1996).

[34] *Church v. City of Huntsville*, 30 F. 3d 1332, 1342–43 (11th Cir. 1994).

Also, Plaintiff's Complaint does not contain sufficient allegations demonstrating a custom or policy of arresting "photojournalists" at demonstrations and protests for filming arrests; and isolating arrestees based on their race and ethnicity.

The crux of Plaintiff's claims is that Plaintiff should have remained freely in the City after 9:00 p.m. Plaintiff claims that the curfew provision under Executive Order Nos. 2020-92 and 2020-94[35] is unconstitutional as they did not mention the exemption of media personnel and, as a result, Plaintiff was arrested for curfew violation. However, the City did not interfere with Plaintiff's First Amendment rights to freely participate and photograph demonstrations and protests within the City. As to Plaintiff's arrest, the record is void of Plaintiff presentation of any press credentials or media identification in order to allow Officer Barber the opportunity to inquire about Plaintiff's alleged media status.

Alternatively, "even if the City's practices resulted in the deprivation of Plaintiff's constitutional rights, *there 'is no evidence that would allow a jury to find that the City knew or should have known that the natural consequence of its policy and practices would be a deprivation of constitutional rights*.'"[36] The City instituted Emergency Executive Orders 2020-92 and 2020-94 as a public safety measure as

---

[35] Executive Order Nos. 2020-92 and 2020-94 were set to expire within 72 hours after execution.

[36] *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir.1987) (emphasis added).

violence flared in Atlanta following the death of George Floyd. Georgia's governor also declared a state of emergency to activate the state's National Guard, which Plaintiff's conceded was present. The Executive Orders were limited appropriately in scope and time to protect citizens and their property during the demonstrations and civil unrest. Therefore, Plaintiff's Complaint should be dismissed.

**B. Officer Barber is Entitled to Qualified Immunity.**

### 1. Qualified Immunity Standard

Claims against Officer Barber are barred by the doctrine of qualified immunity.[37] "'Qualified immunity protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.'"[38] Qualified immunity "is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation."[39] "Questions of qualified immunity must be resolved 'at the earliest possible stage in

---

[37] To the extent that Jane/John Does 1-8 are recognized by this Court, the same analysis is appropriate.

[38] *Gates v. Khokhar et al.*, 884 F.3d 1290, 1296 (2018) (quoting *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)).

[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

litigation.'"[40] "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[41]

"A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action."[42] To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook "are of the type that fell within the employee's job responsibilities."[43]

Here it is undisputed that Officer Barber was performing discretionary functions at all times relevant to this matter.[44] Officer Barber had actual probable cause to arrest Plaintiff due to his violation of Executive Order 2020-94. Thus, "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the

---

[40] *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("we repeatedly have stressed the importance of resolving immunity questions as early as possible in the litigation").

[41] *Gates*, 884 F.3d at 1296. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

[42] *Id*. at 1297.

[43] *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).

[44] *See, e.g., Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir.2002)(holding that "[t]here can be no doubt" that deputies effectuating an arrest are performing discretionary duties).

alleged misconduct."[45] "The judges of the district courts and the courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[46]

### 2. Officer Barber Had Arguable Probable Cause to Arrest Plaintiff.

Assuming *arguendo* that Officer Barber did not have probable cause to arrest Plaintiff, it is abundantly clear that Officer Barber had *arguable probable cause* to arrest Plaintiff. "Even without actual probable cause, however, a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff."[47] "Moreover, when an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest."[48] "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest."[49] "Whether an officer has probable cause or arguable probable cause, or

---

[45] *Gates*, 884 F.3d at 1297.

[46] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[47] *Gates*, 884 F.3d at 1298 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)).

[48] *Id*. (quoting *City of Enterprise*, 140 F.3d at 1383-84).

[49] *Id*. (quoting *City of Enterprise*, 140 F.3d at 1383-84); *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003)("[T]he inquiry is … whether an officer reasonably

neither, depends on the elements of the alleged crime and the operative fact pattern."[50] "In determining whether arguable probable cause exists, the issue is not whether the plaintiff was in fact guilty of the charged offense, but rather, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'"[51]

> The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable merely because it appears, in hindsight, that he might have made a mistake. The concept of arguable probable cause therefore allows for the possibility that an officer might reasonably but mistakenly conclude that probable cause is present. Under this Court's governing precedent, such an officer likewise cannot be held personally liable for false arrest.[52]

Plaintiff was charged with a curfew violation pursuant to the City's Executive Orders.[53] The City's Executive Orders imposed emergency curfew regulations and instituted curfews which began at 9:00 p.m. on June 1, 2020, and ended at sunrise

---

could have believed that probable cause existed, in light of the information the officer possessed.").

[50] *Gates*, 884 F.3d at 1298 (internal citations omitted).

[51] *Jones v. Michael*, 656 Fed. Appx. 923, 927 (11th Cir. 2016) (unpublished) (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010)).

[52] *Gates*, 884 F.3d at 1298.

[53] Dkt. 1, ¶ 46.

on June 4, 2020.[54] Those found in violation of the City's Executive Orders were subject to arrest. The facts of this case demonstrate that Officer Barber had, at a minimum, arguable probable cause to arrest Plaintiff in that Plaintiff violated the City's Executive Orders. Given the totality of these facts, a reasonable officer in the same circumstances and possessing the same knowledge as Officer Barber would have believed that probable cause to arrest Plaintiff existed.

### 3.  Officer Barber did not violate "clearly established law".

In addition to proving that Plaintiff's arrest violated his constitutional rights, Plaintiff must also prove that the right was clearly established at the time of the arrest to overcome qualified immunity.[55] "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable officer would understand what he is doing is unlawful."[56] In its 2018 Gates decision, the Eleventh Circuit Court of Appeals emphasized the "Supreme Court's oft-repeated directive 'not to define clearly established law at a high level of generality.'"[57] The clearly established analysis must focus on the officer's decision "*under the particular circumstances Defendants confronted.*"[58]

---

[54] Dkt. 1, ¶ 24.

[55] *Gates*, 884 F.3d at 1296.

[56] *Bell v. Neukirch*, 979 F.3d 594, 606 (8th Cir. 2020).

[57] *Gates*, 884 F.3d at 1302 (quoting *Mullenix v. Luna*, 136 S.Ct. 305 (2015).

[58] *Id*. (emphasis in original).

Accordingly, the clearly established analysis in the instant matter "must be particularized to the facts" encountered by Officer Barber.[59] As described above, Officer Barber arrested Plaintiff, in the midst of spontaneous protests, pursuant to the City's Emergency Executive Orders.[60] Certainly, Officer Barber had actual probable cause and arguable probable cause to arrest Plaintiff for violation of the City's Executive Orders when Plaintiff remained in the Centennial Olympic Park area, which is public, after the regulated curfew.[61] Following Plaintiff's arrest, Officer Barber secured Plaintiff's personal property.[62] Therefore, Plaintiff failed to meet his burden to show that any of Officer Barber's actions were violative of Plaintiff's clearly established constitutional rights.

### C. Plaintiff's Claims Against Jane and John Does 1-8 Should Be Dismissed as Fictitious Party Pleadings Are Not Permitted in Federal Court.

Generally, fictitious-party pleading is not permitted in federal court.[63] The federal court established a "limited exception to this rule".[64] A plaintiff is permitted

---

[59] *Id*. at 1303.
[60] *Supra* Sections II and III.
[61] *Supra* Section II.
[62] *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)(holding "that inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.").
[63] *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010)(emphasis added).
[64] *Id*. (citing *Dean v. Barber*, 951 F.2d 1210, 1215-16).

to file a claim against a party under a fictitious name "*only when sufficient identifying information is available so the defendant may be served with process*".[65]

The limited exception to this rule is inapplicable in this case as Plaintiff has inadequately identified and pled these fictitious parties. Plaintiff generically describes Jane/John Does Nos. 1-6 as unnamed police officers with the Atlanta Police Department and Jane/John Does Nos. 7-8 as unnamed employees of the Atlanta Department of Corrections.[66] The Atlanta Police Department and Atlanta Department of Corrections employ over 100 persons. There is no description regarding the identities of any of these parties that would allow the Court or anyone else to ascertain the identities of Jane/John Does 1-8. Plaintiff's failure to describe Jane/John Does 1-8 precludes service of process on these parties. The Complaint in the instant case does not identify the unknown officers with enough detail as to allow service of process upon the real parties, as only their purported employers are listed.[67] Therefore, this Court should dismiss all claims against Jane/John Does.[68]

---

[65] *See Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)(emphasis added).

[66] Dkt. 1, ¶ 2.

[67] *See Keno v. Doe*, 74 F.R.D. 587, 588 n. 2 (D.N.J.1977) ("[C]omplaint should state that the name is fictitious and provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served."), *aff'd without opinion*, 578 F.2d 1374 (3rd Cir.1978).

[68] Since the claims against Defendants are not viable and permitted, Plaintiff's claim for punitive damages is barred. Of note, under Georgia law, a person is prohibited from recovering punitive damages against government entities. *Groves v. City of*

**D. Plaintiff's State Law Claim for Violation of the Georgia Open Records Act Is Not Properly Before this Court.**

Count VII of Plaintiff's Complaint alleges that the City violated the Georgia Open Records Act, O.C.G.A. § 50-18-70, *et seq*.[69] However, as a threshold issue, Plaintiff's claim must fail as a matter of law because: 1) this Court lacks jurisdiction over this claim, and 2) the recovery sought in this action is inconsistent with the available remedies for alleged violations of the Act.

In Georgia "[t]he superior courts of this state shall have jurisdiction in law and in equity to entertain actions against persons or agencies having custody of records open to the public use… to enforce compliance with [the Open Records Act]."[70] Similarly, this Court may exercise supplemental jurisdiction over claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[71] Counts I – VI of Plaintiff's Complaint stem from his June 1, 2020 arrest for violating the City of Atlanta's curfew orders.[72]

---

*Atlanta*, 213 Ga.App. 455, 457 (1994)(*citing Marta v. Boswell*, 261 Ga. 427 (1991); *see also*, *Martin v. Hosp. Auth. of Clarke Cty.,* 264 Ga. 626 (1994)). Therefore, Plaintiff cannot recover punitive damages from the City.

[69] Dkt. 1, ¶¶ 175 – 184.

[70] O.C.G.A. § 50-18-73(a).

[71] 28 U.S.C.A. 1367 (West).

[72] *See generally*, Dkt. 1.

However, Count VII stems from an alleged Georgia Open Records Act violation that occurred over eight months later, in February of 2021.

Plaintiff has failed to demonstrate how his alleged unconstitutional arrest is "part of the same case and controversy" as an alleged Open Records Act violation that occurred eight months afterwards. Thus, Plaintiff has fallen woefully short of meeting his burden of showing that this Court may exercise its supplemental jurisdiction. Count VII should be dismissed because this Court lacks jurisdiction to review this claim.

Additionally, to reach the merits of Plaintiff's claim, this Court would be required to engage in an in-camera review of the responsive documents to determine whether the documents were appropriately withheld.[73] This is the only remedy that Plaintiff is entitled to at this phase of the proceedings and not one that Plaintiff has requested.[74] Thus, this Court is without the power to grant the recovery sought and Count VII is not ripe for adjudication.

Even if the allegations contained in Plaintiff's Complaint are taken as true, Count VII should be dismissed because this Court lacks jurisdiction over said claim. The Court also lacks the authority to provide the remedy that Plaintiff has requested

---

[73] O.C.G.A. § 50-18-72(a)(41).
[74] *Id.*; *See* Dkt. 1, ¶¶ 175 – 184.

because it is inconsistent with the available remedies for the alleged violation. Thus, Plaintiff's state law claim should be dismissed in its entirety.

## IV.    CONCLUSION

Plaintiff's *Monell* claims should be dismissed. Officer Barber is entitled to qualified immunity. Plaintiff's arrest on June 1, 2020 was made with probable cause and did not violate Plaintiff's rights under the First, Fourth, and Fourteenth Amendments, Federal Privacy Protection Act and Georgia State law. For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted this 7th day of January 2022.

/s/ *Hermise Pierre*
**HERMISE PIERRE**
**Assistant Attorney II**
Georgia Bar No. 597541
(470) 898-8177 *Direct*
(404) 225-5772 *Fax*
hpierre@atlantaga.gov
**LAURA T. YELLIG**
**Attorney**
Georgia Bar No. 982299
(470) 522-9115 *Direct*
ltyellig@atlantaga.gov

*Attorneys for Defendant*

**CITY OF ATLANTA DEPARTMENT OF LAW**
55 Trinity Avenue, SW, Suite 5000
Atlanta, Georgia 30303-3520
Telephone: (404) 546-4100
Fax: (404) 588-3239

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **SHARIF HASSAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO.** |
| ) | |
| **v.** ) | **1:21-CV-04629-TWT** |
| ) | |
| **CITY OF ATLANTA, ATLANTA** ) | |
| **POLICE OFFICER FRANCESCA** ) | |
| **BARBER, ID No. 6427 sued in her** ) | |
| **individual capacity; JANE AND JOHN** ) | |
| **DOES Nos. 1-6, all current or former** ) | |
| **employees of the Atlanta Police** ) | |
| **Department sued in their individual** ) | |
| **capacities,** ) | |
| **Defendants.** ) | |

## CERTIFICATION

Counsel for the City Defendants hereby certifies that this pleading has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

Respectfully submitted,

/s/ *Hermise Pierre*
**HERMISE PIERRE**
**Assistant Attorney II**
Georgia Bar No. 597541
(470) 898-8177 *Direct*
hpierre@atlantaga.gov
***Attorney for Defendants***

21

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **SHARIF HASSAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION FILE NO.** |
| ) | |
| **v.** ) | **1:21-CV-04629-TWT** |
| ) | |
| **CITY OF ATLANTA, ATLANTA** ) | |
| **POLICE OFFICER FRANCESCA** ) | |
| **BARBER, ID No. 6427 sued in her** ) | |
| **individual capacity; JANE AND JOHN** ) | |
| **DOES Nos. 1-6, all current or former** ) | |
| **employees of the Atlanta Police** ) | |
| **Department sued in their individual** ) | |
| **capacities,** ) | |
| **Defendants.** ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served the foregoing ***DEFENDANTS' CITY OF ATLANTA AND POLICE OFFICER FRANCESCA BARBER MOTION TO DISMISS PLAINTIFF'S COMPLAINT*** upon opposing counsel listed below via this Court's CM/ECF system and by depositing a copy of the same in the United States Mail with proper postage affixed thereon to ensure delivery as follows:

*[Plaintiff's addresses on following page]*

| Gerald Weber | Clare Norins | L. Burton Finlayson |
|---|---|---|
| wgerryweber@gmail.com | cnorins@uga.edu | lbfcourts@aol.com |
| **LAW OFFICES OF GERRY WEBER, LLC** Post Office Box 5391 Atlanta, Georgia 31107 (404) 522-0507 | **FIRST AMENDMENT CLINIC** **University of Georgia School of Law** Post Office Box 388 Athens, Georgia 30603 (706) 542-1419 | **LAW OFFICE OF L. BURTON FINLAYSON, LLC** 931 Ponce de Leon Avenue, NE Atlanta, Georgia 30306 (404) 872-0560 |

This 7th day of January 2022.

/s/ *Hermise Pierre*
**HERMISE PIERRE**
**Assistant Attorney II**
Georgia Bar No. 597541
(470) 898-8177 *Direct*
(404) 225-5772 *Fax*
hpierre@atlantaga.gov

*Attorney for Defendants*

**CITY OF ATLANTA DEPARTMENT OF LAW**
55 Trinity Avenue, SW, Suite 5000
Atlanta, Georgia 30303-3520
Telephone: (404) 546-4100
Fax: (404) 588-3239