IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHARIF HASSAN,

    Plaintiff,

    v.

CITY OF ATLANTA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-4629-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants' Motion to Dismiss [Doc. 4]. For the reasons set forth below, the Court GRANTS in part and DENIES in part the Defendants' Motion to Dismiss [Doc. 4].

### I.  Background

This case arises from the alleged unconstitutional arrest and prosecution of the Plaintiff Sharif Hassan and the alleged unconstitutional seizure of his personal property. The Court accepts the facts alleged in the Complaint as true for purposes of the Defendants' Motion to Dismiss. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

The Plaintiff is a freelance photojournalist who has worked domestically and internationally documenting, among other things, political and social-change events. (Compl. ¶¶ 11-12.) His photographs have appeared in publications such as the *Atlanta Journal-Constitution*, *Atlanta Magazine*, *The Mainline*, *Al Shorouk*, *National Geographic Adventure*, *Points North*, and

*Bicycling Magazine.* (*Id.* ¶ 13.) On June 1, 2020, the Plaintiff was photographing protests around Atlanta that broke out in response to George Floyd's murder. (*Id.* ¶¶ 16-18, 27.) Three days earlier, Atlanta Mayor Keisha Lance Bottoms had issued and ordered enforcement of Executive Order 2020-92, which declared a city-wide curfew from 9 P.M. to sunrise for 72 hours. That curfew was then extended from June 1 until June 4 by Executive Order 2020-94. (*Id.* ¶¶ 19, 24.) Neither Order had an explicit exception for media to engage in newsgathering or for other First Amendment-protected activities. (*Id.* ¶¶ 21, 25.) But on or about May 30, 2020, Defendant the City of Atlanta adopted a policy ("Media Policy"), approved by Mayor Bottoms, of exempting some media members from the Orders but not others. (*Id.* ¶¶ 22, 26.)

Shortly before the curfew started on June 1, the Plaintiff watched as a line of Atlanta Police Department (the "APD") officers pushed protesters north from the CNN Center on Centennial Olympic Park Drive. (*Id.* ¶ 32.) Behind the APD officers was an advancing line of National Guard troops, and the Plaintiff was situated with other media members between the APD officers and the guardsmen. (*Id.* ¶¶ 33-36.) At some point, APD officers pursued a fleeing man down a side street, and the Plaintiff followed and started to photograph the man's arrest from a safe distance without interfering in the arrest. (*Id.* ¶¶ 37-39.) Seconds later, Defendant APD Officer Jane/John Doe No. 1 blocked the Plaintiff's camera view and then, along with Defendant APD Officer Jane/John Doe No. 2, arrested the Plaintiff for violating the City's curfew

2

order. (*Id.* ¶¶ 42-46.) The Complaint alleges, upon information and belief, that either Doe No. 1 or Doe No. 2 is Defendant Officer Francesca Barber, who signed the Plaintiff's arrest citation. (*Id.* ¶ 45.) During his arrest, the Plaintiff was holding a camera and wearing a hip belt with his camera lenses, and he told Does Nos. 1-2 that he was a journalist taking photographs. (*Id.* ¶¶ 47-48.) Although other media members were present in the immediate vicinity of the Plaintiff's arrest, they were not stopped or arrested by the police. (*Id.* ¶ 51.)

Once under arrest, the Plaintiff's camera and other personal property were confiscated from him, including memory cards containing his photographs of protests earlier that week. (*Id.* ¶¶ 54-55.) The Plaintiff was eventually transported with other arrestees to the Atlanta City Detention Center (the "ACDC"), which is operated by the Atlanta Department of Corrections (the "ADC"). (*Id.* ¶¶ 59-60.) According to the Complaint, the Plaintiff was subjected to differential treatment at the ACDC compared to other people who were arrested for curfew violations. (*Id.* ¶¶ 63-94.) He alleges, upon information and belief, that this differential treatment was due to his Arab race and ethnicity, and that it was undertaken "at the direction of and with the full knowledge and supervision of" Defendants Jane/John Does Nos. 3-8. (*Id.* ¶¶ 95-96.) Although the Plaintiff received his camera a week after being released, several of his memory cards were never returned at all. (*Id.* ¶¶ 97-98.) The Plaintiff had intended to sell his confiscated images to news organizations or other publishers. (*Id.* ¶ 101.)

On June 3, 2020, the City announced on social media that people seeking medical help, workers, first responders, and the homeless were exempt from the 9 P.M.-to-sunrise curfew. (*Id.* ¶ 103.) The Complaint alleges that the Plaintiff qualifies for the worker exception because he was photographing official police activity in his professional capacity at the time of his arrest. (*Id.* ¶ 104.) Rather than drop the curfew violation charge against the Plaintiff, the City continued to prosecute him for more than six months in municipal court. (*Id.* ¶ 105.) The effect was that the Plaintiff could not travel freely, including for work, in case he needed to appear in court on short notice. (*Id.* ¶ 106.) Ultimately, on January 13, 2021, the prosecutor dropped the charge, purportedly for evidentiary reasons. (*Id.* ¶ 108.)

The next month, the Plaintiff's counsel submitted a records request under the Georgia Open Records Act to the City's Law Department. (*Id.* ¶113.) The request sought

> all departmental policies, orders, operating procedures, memos, other documents, or communications regarding: the implementation of any and all 2020 executive orders by the Mayor of Atlanta establishing a city-wide curfew; any exemptions or exceptions to 2020 curfews generally and any specific exemption for members of the media; and any law enforcement investigations, detentions, or arrests of members of the media between the dates of May 29, 2020 and June 8, 2020.

(*Id.*) The City declined to produce any responsive documents to the Plaintiff on the grounds that they were protected by attorney-client privilege. (*Id.* ¶ 117.) The Plaintiff then filed this action on November 8, 2021, against the City,

4

Officer Barber, and Does Nos. 1-8 under 42 U.S.C. § 1983, the Federal Privacy Protection Act, and the Open Records Act. The Complaint seeks declaratory and injunctive relief, damages, and litigation expenses to remedy alleged violations of the Plaintiff's First, Fourth, and Fourteenth Amendment protections and of other statutory rights. The Defendants now collectively move to dismiss the Complaint in its entirety.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only

give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III. Discussion

#### A. *Monell* Liability

In Counts I and II of the Complaint, the Plaintiff raises facial and as-applied constitutional challenges against the City for enacting Orders 2020-92 and 2020-94. He alleges that the Orders failed to exempt all media members from the curfew in violation of the First Amendment, and that the City selectively exempted some media members from the curfew in violation of the First and Fourteenth Amendments. The Plaintiff also asserts a claim for unlawful seizure, false arrest, and malicious prosecution (Count VI) as well as a claim for violation of the Open Records Act (Count VII) against the City.

Without distinguishing specific claims, the Defendants contend that the City should be dismissed under the municipal-liability standard articulated in *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 7.) In *Monell*, the Supreme Court decided that "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). More specifically, "[i]t is only when the execution of the government's policy or custom inflicts the injury that

the municipality may be held liable." *Id.* (quotation marks and alteration omitted); *see also Underwood v. City of Bessemer*, 11 F.4th 1317, 1333 (11th Cir. 2021) ("[T]he plaintiff must demonstrate the municipality's policy or custom was the 'moving force' behind the alleged constitutional violation."). To make out a *Monell* claim, the plaintiff must allege "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Underwood*, 11 F.4th at 1317 (quotation marks omitted).

As an initial matter, the Plaintiff has sufficiently identified a government policy on which to base his § 1983 claim(s) against the City. The Complaint alleges that on May 29 and June 1, 2020, Mayor Bottoms issued and ordered enforcement of Orders 2020-92 and 2020-94, respectively, which created and then extended a 9 P.M.-to-sunrise curfew without an explicit media exception. (Compl. ¶¶ 19-21, 24-25.) On or about May 30, 2020, the City also purportedly adopted the Media Policy, again approved by Mayor Bottoms, that exempted some actively working media members but not others from the Orders. (*Id.* ¶¶ 22-23, 26.) As the City's chief executive, Mayor Bottoms had authority under the local code to declare an emergency and impose curfew regulations for up to 72 hours. (*Id.* ¶ 20.) *See* Atlanta, Ga., Code of Ordinances § 2-181. So, the Orders and the Media Policy meet the requirements of a government policy under *Monell*: that is, they were "officially

7

adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quotation marks omitted) (noting only those officials with *final policymaking authority* can render a municipality liable under § 1983).

The next question for the Court is whether the Orders infringed on any of the Plaintiff's First Amendment protections—in particular, the right to conduct legitimate newsgathering in public places. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 8.) Both parties ask the Court to apply intermediate scrutiny to this question since the Orders are content-neutral time, place, and manner restrictions on speech. (*Id.* at 9-11; Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 5-8.) But intermediate scrutiny is the wrong standard in a case involving a temporary, emergency restriction on speech. "In such circumstances, governing authorities must be granted the proper deference and wide latitude necessary for dealing with the emergency." *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998). Thus, the appropriate standard of review is limited to "[1] whether the executive's actions were taken in good faith and [2] whether there is some factual basis for the decision that the restrictions imposed were necessary to maintain order." *Id.* (quotation marks and alterations omitted); *see also Pilgrim v. City of Atlanta*, 2022 WL 797584, at *3 (N.D. Ga. Mar. 16, 2022) (employing the *Smith* standard in a First

8

Amendment challenge to the same Order 2020-92 at issue in this case).

The Plaintiff makes no allegations that the Orders were issued in bad faith, so his constitutional challenge fails the first prong of the *Smith* test. On the second prong, though, the Court finds there is a set of facts that, if proven, could obviate the factual basis for subjecting First Amendment-protected newsgathering to the Orders. In particular, the Complaint alleges that the City had a Media Policy of exempting certain media members from the emergency curfew. (Compl. ¶¶ 22, 26.) Some of those people were informed in writing of their exemption, although the City allegedly had no plan for identifying and notifying people who were exempt from the Orders. (*Id.* ¶ 22.) At the same time, the Orders continued to be enforced against non-exempt journalists who were working during the curfew. (*Id.* ¶ 26, 51, 133.) In its briefs, the City does not explain why some journalists were permitted to work while others were not, or why it was necessary to ban some, but not all, newsgathering activities to maintain order. Absent this explanation, the Court cannot uphold the Orders as necessary given their inconsistent application among members of the media.

The Defendants' remaining arguments against *Monell* liability can be easily dispensed with. First, they contend that "the record is void of Plaintiff presentation of any press credentials or media identification in order to allow Officer Barber the opportunity to inquire about Plaintiff's alleged media status." (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 10.) The Complaint

states otherwise: during his arrest, the Plaintiff allegedly told the arresting officers that he was there as a journalist to take photographs; he was also holding a camera, wearing a hip belt with camera lenses, and had been walking with other media members before his arrest. (Compl. ¶¶ 34, 36, 47, 48.) Second, the Defendants argue that there is no evidence the City "knew or should have known" that its policies were unconstitutional. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 10 (emphasis omitted) (quoting *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).) But the sole authority cited for this proposition addressed a municipality's failure to correct police misconduct, not the affirmative adoption of an unconstitutional policy. *See Brooks*, 813 F.2d at 1193. Any knowledge (or lack thereof) about the Orders' constitutionality does not absolve the City of liability in the present case.

### B. Qualified Immunity

The Complaint pleads four claims against Officer Barber in her individual capacity—for interference with and retaliation for exercising the First Amendment right to record (Count III); for unlawful seizure of property under the Fourth Amendment (Count IV); for violation of the Federal Privacy Protection Act (Count V); and for unlawful seizure, false arrest, and malicious prosecution under the Fourth Amendment (Count VI). The Defendants move to dismiss these claims as barred by the doctrine of qualified immunity. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 11.)

10

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation marks omitted). "A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action." *Id.* at 1297. Once that is shown (and it is not challenged here), "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* The Court has discretion to decide these issues in either order depending on the circumstances, but the Plaintiff must demonstrate both prongs to survive a qualified-immunity defense. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

The Plaintiff argues that he "has a clearly-established right to photograph policer officers carrying out their official duties in public, without police interference." (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 14.) To show that a constitutional right is clearly established in the law, a plaintiff may point to, *inter alia*, (1) "a materially similar case [that] has already been decided" or (2) "a broader, clearly established principle that should control the

11

novel facts of the situation." *Gaines*, 871 F.3d at 1208 (quotation marks omitted). Relevant here, "[c]itizens have 'a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct.'" *Bowens v. Superintendent of Miami S. Beach Police Dep't*, 557 F. App'x 857, 863 (11th Cir. 2014) (quoting *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)); *see also Smith*, 212 F.3d at 1333 (holding that "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest"). Indeed, "law enforcement officers may not arrest an individual as a way to thwart or intrude upon First Amendment rights otherwise being validly asserted." *Toole v. City of Atlanta*, 798 F. App'x 381, 387 (11th Cir. 2019) (quotation marks omitted). Eleventh Circuit precedent also "clearly establishes that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures." *Id.* at 387 (quotation marks and alterations omitted).

Although the Plaintiff has identified clearly established constitutional rights, the Defendants argue that those rights were not violated because Officer Barber had probable cause, or at least arguable probable cause, to arrest him for a curfew violation. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 12-15.) "[T]he existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Gates*, 884 F.3d at 1297 (quotation marks omitted). "Probable cause exists where the facts within

12

the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id.* at 1298 (quotation marks omitted). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (quotation marks omitted). Even without actual probable cause, a policer officer is still entitled to qualified immunity—both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest—if he had *arguable* probable cause to arrest the plaintiff. *Id.* This more relaxed standard considers whether "reasonable officers in the same circumstances and possessing the same knowledge as [the defendant] *could have believed* that probable cause existed to arrest." *Toole*, 978 F. App'x at 385 (quotation marks omitted) (emphasis in original).

"Whether an officer has probable cause or arguable probable cause, or neither, depends on the elements of the alleged crime and the operative fact pattern." *Gates*, 884 F.3d at 1298 (quotation marks omitted). Here, the Plaintiff was arrested for and charged with a curfew violation on June 1, 2020, under the then-effective Order 2020-94. (Compl. ¶¶ 24, 27, 46, 105.) Order 2020-94 imposed a 9P.M.-to-sunrise curfew beginning on June 1 and ending on June 4. (*Id.* ¶ 24.) Because the Plaintiff was out in public during the curfew, the Defendants argue that Officer Barber had at minimum arguable probable cause to arrest the Plaintiff. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at

14-15.)

The Plaintiff counters that, in a retaliatory arrest case such as this, Officer Barber should not be shielded by qualified immunity even assuming probable cause. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 21-22.) "Although probable cause should generally defeat a retaliatory arrest claim," the Supreme Court has recognized "a narrow qualification . . . where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019).

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Id.* For that reason, probable cause will not confer qualified immunity "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* "After making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." *Id.*

The Court concludes that the Plaintiff has adequately alleged the *Nieves* exception to the probable-cause rule. According to the Complaint, the Plaintiff was arrested seconds after he began photographing another arrest "from a safe distance without interfering with the arrest in any way." (Compl. ¶¶ 39-44.)

14

Doe No. 1 blocked the Plaintiff's camera view, preventing him from photographing the arrest, and then arrested him with help from Doe No. 2. (*Id.* ¶¶ 42-44.) The Plaintiff told the officers, one of whom is believed to be Officer Barber, that he was taking photographs as a journalist. (*Id.* ¶ 47.) Before beginning to photograph the arrest, the Plaintiff had been walking without issue near APD officers in a group of media members. (*Id.* ¶¶ 34-36.) The other media members were in the "immediate vicinity" of the Plaintiff's arrest while the curfew was in effect, but unlike the Plaintiff, they apparently did not try to record the initial arrest and were not stopped or arrested by the police. (*Id.* ¶ 51.) Thus, Officer Barber does not merit qualified immunity at this stage because, taking the allegations as true, the Plaintiff "was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[1] *Nieves*, 139 S. Ct. at 1727.

### C.  Fictitious-Party Pleading

The Plaintiff asserts several claims against APD officers (Does Nos. 1-6) and ADC employees (Does Nos. 7-8) whose identities are as-yet unknown.

---

[1] The Defendants fail to address the Plaintiff's *Nieves* argument altogether on reply, which arguably amounts to an abandonment of Officer Barber's qualified-immunity claim. *See, e.g.*, *West Flagler Assocs., Ltd. v. City of Miami*, 407 F. Supp. 3d 1291, 1297 (S.D. Fla. 2019) ("The Defendant abandoned its argument regarding the Plaintiff's standing because its Reply failed to address any of the Defendant's [sic] arguments or authority."); *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1373 (S.D. Ga. 2015) ("Defendants abandoned any challenge to the [Plaintiff's argument] when they failed to address it in their reply brief.")

Allegedly, these unnamed defendants are responsible for the Plaintiff's arrest, the seizure of his unreturned camera memory cards, and his prosecution without probable cause. "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Even so, the Eleventh Circuit has "allowed the initial use of an unnamed defendant where discovery would likely uncover that defendant's identity." *Morris v. Hays SP Warden*, 638 F. App'x 880, 881 (11th Cir. 2016); *see also Bowens*, 557 F. App'x at 862 ("[W]e have explained that a claim may be maintained against unnamed defendants where allegations in the complaint make clear the plaintiff could uncover the names through discovery."). The Defendants argue that the Plaintiff has inadequately pleaded the fictitious parties to learn their names in discovery. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 17.) In response, the Plaintiff moved to serve expedited interrogatories about the Doe Defendants on the City and Officer Barber; the Court denied that motion on May 13, 2022.

Beginning with the arresting officers, the Complaint alleges that Doe No. 1 is an APD officer who blocked the Plaintiff's camera view while he was photographing another arrest. (Compl. ¶ 42.) Doe No. 1 and Doe No. 2, also an APD officer, allegedly grabbed the Plaintiff, made him lie face-down on the ground, and handcuffed him with plastic zip ties. (*Id.* ¶¶ 43-44.) The Complaint continues that, upon information and belief, one of Does Nos. 1-2 is Officer Barber since she later signed the Plaintiff's arrest citation. (*Id.* ¶ 45.) Under

Eleventh Circuit precedent, these allegations are considered detailed enough to fill in the informational gaps about Does Nos. 1-2 during discovery, so the Plaintiff's claims may initially proceed against them under fictitious names. *See, e.g.*, *Morris*, 638 F. App'x at 881 (permitting the plaintiff to maintain claims against unnamed defendants "working at the prison who pepper-sprayed and beat him"); *Bowens*, 557 F. App'x at 862 (concluding the plaintiff could uncover the names of "Arresting Officer(s) of Miami South Beach Police Department" during discovery).

By contrast, the Complaint contains no facts that could reasonably lead to the discovery of Does Nos. 3-8. It alleges that Does Nos. 3-6 are "current or former employees of the APD," and Does Nos. 7-8 are "current or former employees of the ADC," "sued in their individual capacities who at all times relevant to this complaint acted under color of law." (Compl. ¶¶ 3-4.) The Complaint also summarily asserts that the Plaintiff's "differential treatment while in custody at ACDC was undertaken at the direction of and with the full knowledge and supervision of . . . DOES Nos. 3-6 employed by the [APD], and . . . DOES Nos. 7-8 employed by the [ADC]." (*Id.* ¶ 95.) But none of the Plaintiff's claims relate to his alleged differential treatment at the ACDC, and none of his allegations describe any specific actions taken by Does Nos. 3-8 (as opposed to the Defendants collectively) against him. (*E.g.*, *id.* ¶¶ 147, 149-51,

17

173.)[2] Merely pleading their employers, as the Plaintiff has done, gives the Court little hope that these Doe Defendants could ever be identified when the APD and the ADC employ thousands of people between them.[3] Accordingly, the Court grants the Defendants' Motion to Dismiss as to Does Nos. 3-8.

Indeed, the Eleventh Circuit has affirmed the dismissal of unnamed defendants when faced with similarly vague factual allegations. For example, in *Bowens*, the plaintiff asserted claims against "Certain Officers whose true identities are unknown to plaintiff." 557 F. App'x at 861 (alterations omitted). In the Eleventh Circuit's words, "no allegations in his complaint describe what actions against [the plaintiff] these unknown officers took. Nor is there any indication who these officers are that would permit us to conclude they could be served or that [the plaintiff] could learn the names of these officers during discovery." *Id.* On that basis, the Eleventh Circuit affirmed the district court's dismissal of the claims against the "Certain Officers." *Id.* at 862. Likewise, in

---

[2] These collective references to the "Defendants" fail to give Does 3-8 fair notice of the claims against them and the grounds upon which each claim rests, in violation of Rule 8(a)(2). *See Twombly*, 550 U.S. at 555.

[3] According to the most updated figures the Court could find, the APD has more than 2,000 officers, and the ADC has more than 230 employees. *See About APD*, Atlanta Police Department, https://www.atlantapd.org/about-apd (last visited May 23, 2022); Everett Catts, *Mayor's office continues drives to close Atlanta City Detention Center as others push to keep it open*, The Neighbor, Jan. 25, 2021. This Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting Fed. R. Evid. 201(b)).

*Richardson*, the plaintiff identified a fictitious defendant merely as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute." 598 F.3d at 738. Here again, the Eleventh Circuit held that "the description in [the plaintiff's] complaint was insufficient to identify the defendant among the many guards employed at CCI, and the district court properly dismissed this claim." *Id.*

### D. Supplemental Jurisdiction

In Count VII of the Complaint, the Plaintiff asserts a claim under the Open Records Act alleging that the City failed to timely produce records based on inapplicable privileges. The Defendants move to dismiss this claim on jurisdictional grounds and because the recovery sought is inconsistent with the Act's available remedies. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 18.)

The Open Records Act vests jurisdiction in the Georgia superior courts to entertain actions seeking to enforce compliance with the Act. O.C.G.A. § 50-18-73(a). This Court, in turn, has "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Defendants contend that the Plaintiff's alleged unconstitutional arrest is too attenuated from the City's alleged Open Records Act violation to establish supplemental jurisdiction. (Defs.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 18-19.) The Court disagrees: the Plaintiff sought documents and communications from the City regarding the same Orders and the same Media

19

Policy at issue in his federal claims. (Compl. ¶¶ 113, 177.) The eight-month gap between the Plaintiff's arrest and his records request does not undermine their fundamental relatedness. *See, e.g.*, *Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1374 (M.D. Ga. 2020) (exercising supplemental jurisdiction over an Open Records Act claim where the records sought were related to the same events as the plaintiff's constitutional claims).

Next, the Defendants argue that the Plaintiff has failed to plead the only statutory remedy available to him—in-camera review of the withheld documents. (Defs.' Br. in Supp. of Defs.' Mot. to Dismiss, at 19.) To the contrary, the Complaint seeks "declaratory and injunctive relief requiring the City to provide [the Plaintiff] with access to the requested records." (Compl. ¶ 183.) Such broad relief undoubtedly encompasses any in-camera review necessary to adjudicate the merits of the Open Records Act claim. The Motion to Dismiss should thus be denied as to this claim.

## IV.     Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the Defendants' Motion to Dismiss [Doc. 4].

SO ORDERED, this ___1st___ day of June, 2022.

_____
THOMAS W. THRASH, JR.
United States District Judge